1
2
3
4
5
6
7
8

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| EMELITO EXMUNDO, | CASE NO. 1:07-cv-01711-LJO-GBC (PC) |
| Plaintiff, | ORDER DISMISSING COMPLAINT WITH LEAVE TO AMEND |
| v. | (ECF No. 36) |
| MTA DREW, et al., | FOURTH AMENDED COMPLAINT DUE WITHIN THIRTY DAYS |
| Defendants. | |

_____/

## I.    PROCEDURAL HISTORY

Plaintiff Emelito Exmundo ("Plaintiff") is a state prisoner who is proceeding pro se and in forma pauperis in this civil rights action pursuant to 42 U.S.C. § 1983.  Plaintiff filed this action in California Superior Court, County of Kings, on April 9, 2007.  (ECF No. 1, Attach. 1.)  Defendants removed the action to federal court on November 26, 2007.  (ECF No. 1.)  Plaintiff's first and second amended complaints were dismissed, with leave to amend, for failure to state any cognizable claims.  (ECF Nos. 17, 18, 26, & 30.)

Plaintiff filed his Third Amended Complaint on April 18, 2011.  (ECF No. 36.)  For the reasons set forth below, Plaintiff has again failed to state a cognizable claim upon which relief may be granted.

## II.    SCREENING REQUIREMENT

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity.  28 U.S.C. § 1915A(a).  The Court must dismiss a complaint or portion thereof if the prisoner has

1

raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1), (2). "Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that . . . the action or appeal . . . fails to state a claim upon which relief may be granted." 28 U.S.C. § 1915(e)(2)(B)(ii).

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)). Plaintiff must set forth "sufficient factual matter, accepted as true, to 'state a claim that is plausible on its face.'" Iqbal, 129 S.Ct. at 1949 (quoting Twombly, 550 U.S. at 555). While factual allegations are accepted as true, legal conclusions are not. Iqbal, 129 S.Ct. at 1949.

## III.  SUMMARY OF COMPLAINT

Plaintiff alleges interference with his mail, retaliation, excessive force, failure to protect, deliberate indifference to medical need, insufficient due process, violations of prison policies, conspiracies, and other state law claims. Plaintiff names the following individuals as Defendants: J. A. Tilton, M. Cate, D. G. Adams, R. Vella, Pina, H. Q. Gadsden, Speidell, Drew, Renteria, and Cooper.

Plaintiff alleges as follows: Defendant Renteria opened Plaintiff's confidential mail not in his presence. Then later Renteria refused to inspect Plaintiff's outgoing mail, then inspected it and told Plaintiff to seal it, but then refused to take it. Plaintiff filed a grievance. Everything that occurred after was in retaliation for that grievance against Renteria. Renteria delayed Plaintiff's mail by hours so that he had to wait to respond. He also refused to call Plaintiff to his assigned work, arbitrarily searched only Plaintiff before going into buildings, and gave Plaintiff's niece's letter to a child molester. Plaintiff filed another grievance. Then he started being retaliated against by other prison officials.

2

1   On February 15, 2006, Defendant Drew asked Plaintiff to withdraw the complaint.

2   Cooper and Renteria then searched Plaintiff and went through his record all while requiring

3   Plaintiff to keep his arms raised, causing Plaintiff great pain.   On February 19, 2006,

4   Cooper kicked Plaintiff's feet farther apart during a bodily search and again made him keep

5   his arms up.   Plaintiff filed a complaint against Defendants Pina, Drew, Cooper, Renteria,

6   and Vella.

7   On March 24, 2006, Pina retaliated against Plaintiff by filing false rvrs against him.

8   Defendant Gadsden removed Plaintiff from his job.   Defendant Vella placed Plaintiff

9   on C-status.   During the hearing on the rvrs, Plaintiff was not allowed to call witnesses and

10   was not allowed to be heard.

11   On May 6, 2006, Plaintiff was extracted from his cell by order of Vella.

12   During an ICC segregation hearing, Plaintiff was not allowed to call witnesses by

13   Vella.   Plaintiff was placed in ad-seg.

14   Plaintiff was not notified of the possibility of contracting Valley Fever.

15   Plaintiff requests declaratory and injunctive relief, and compensatory and punitive

16   damages.

17   **IV.    ANALYSIS**

18   The Civil Rights Act under which this action was filed provides:

19   Every person who, under color of [state law] . . . subjects, or
20   causes to be subjected, any citizen of the United States . . . to
    the deprivation of any rights, privileges, or immunities secured
21   by the Constitution . . . shall be liable to the party injured in an
    action at law, suit in equity, or other proper proceeding for
22   redress.

23   42 U.S.C. § 1983.   "Section 1983 . . . creates a cause of action for violations of the federal

24   Constitution and laws."   Sweaney v. Ada County, Idaho, 119 F.3d 1385, 1391 (9th Cir.

25   1997) (internal quotations omitted).

26   //

27   ///

28   ////

3

### A.   <u>First Amendment</u>

Plaintiff makes allegations of mail interference and retaliation both in violation of the First Amendment.

#### 1.   Mail Interference

Plaintiff claims his First Amendment right to send and receive mail is being violated. Prisoners have "a First Amendment right to send and receive mail." Witherow v. Paff, 52 F.3d 264, 265 (9th Cir. 1995) (per curiam).  However, there must be a "delicate balance" between prisoners' First Amendment rights and the discretion given to prison administrators to govern the order and security of the prison.  Thornburgh v. Abbott, 490 U.S. 401, 407-408 (1989).  Prison officials have more leeway to regulate incoming than outgoing mail because of the greater security risks inherent in materials coming into a prison.  Id. at 413.

#### a.   Incoming Mail

As stated above, prisoners enjoy a First Amendment right to send and receive mail. Witherow, 52 F.3d at 265 (citing Thornburgh, 490 U.S. at 407).  A prison, however, may adopt regulations or practices which impinge on a prisoner's First Amendment rights as long as the regulations are "reasonably related to legitimate penological interests." Turner v. Safley, 482 U.S. 78, 89 (1987).  The Turner standard applies to regulations and practices concerning all correspondence between prisoners and to regulations concerning incoming mail received by prisoners from non-prisoners.  Thornburgh, 490 U.S. at 413.

The inspection for contraband of non-legal mail does not violate a prisoner's constitutional rights. See Witherow v. Paff, 52 F.3d 264, 265-66 (9th Cir. 1995) (upholding inspection of outgoing mail); Smith v. Boyd, 945 F.2d 1041, 1043 (8th Cir. 1991) (upholding inspection of incoming mail); Gaines v. Lane, 790 F.2d 1299, 1304 (7th Cir. 1986) (upholding inspection of outgoing and incoming mail).

The Ninth Circuit and other circuits have held that an isolated instance or occasional opening of inmate legal mail, outside of the inmate's presence, does not violate the Constitution.  See Stevenson v. Koskey, 877 F.2d 1435, 1441 (9th Cir. 1989) (prison

4

1    guard's opening of inmate's legal mail outside of the inmate's presence was, at most,

2    negligence, and did not reach the level of intent necessary for constitutional violation);

3    Brewer v. Wilkinson, 3 F.3d 816, 825 (5th Cir. 1993); Gardner v. Howard, 109 F.3d 427,

4    431 (8th Cir. 1997) (isolated, single instance of opening incoming confidential legal mail

5    does not support a constitutional claim); Smith v. Maschner, 899 F.2d 940, 944 (10th Cir.

6    1990) (isolated incident of opening inmate legal mail "without evidence of improper motive

7    or resulting interference with [the inmate's] right to counsel or to access the courts, does

8    not give rise to a constitutional violation").

9        Plaintiff states that Defendant Renteria opened Plaintiff's confidential mail outside

10   of his presence.  Plaintiff does not state that it was legal mail.  Assuming it was not legal

11   mail, the inspection of it outside of Plaintiff's presence did not violate his rights.  Assuming

12   it was legal mail, isolated incidents of legal mail opening outside of Plaintiff's presence did

13   not violate his rights.  Therefore, this claim fails.

14               b.    Outgoing Mail

15       With respect to outgoing correspondence from prisoners to non-prisoners, an

16   exception to the Turner standard applies.  Because outgoing correspondence from

17   prisoners does not, by its very nature, pose a serious threat to internal prison order and

18   security, there must be a closer fit between any regulation or practice affecting such

19   correspondence and the purpose it purports to serve.  Thornburgh, 490 U.S. at 411-12.

20   Censorship of outgoing prisoner mail is justified if the following criteria are met:  (1) the

21   regulation furthers "an important or substantial government interest unrelated to the

22   suppression of expression" and (2) "the limitation on First Amendment freedoms must be

23   no greater than is necessary or essential to the protection of the particular governmental

24   interest involved."   Procunier, 416 U.S. at 413, overturned on other grounds by

25   Thornburgh, 490 U.S. at 413-14.

26       Plaintiff states that Defendant Renteria initially refused to inspect Plaintiff's outgoing

27   mail, then inspected it but refused to take it which delayed it being sent out.  Again, it

28   appears that this was an isolated incident of negligence, which does not violate Plaintiff's

constitutional rights.  Plaintiff does not state that the mail never went out, but that it was merely delayed between one and three days.  This is not sufficient to state a constitutional violation.

### 2.   Retaliation

Plaintiff states that he was retaliated against by Defendants Renteria, Drew, Cooper, Pina, Vella, and Gadsden for filing a grievance against Renteria.

"Within the prison context, a viable claim of First Amendment retaliation entails five basic elements:  (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal."  Rhodes v. Robinson, 408 F.3d 559, 567-68 (9th Cir. 2005).

At this time, Plaintiff has pleaded facts insufficient to state a claim of retaliation. Plaintiff states that he filed a grievance against Renteria for mail interference.  Renteria then retaliated by continued mail interference, refusal to call Plaintiff to work, searches, and giving Plaintiff's niece's letter to a child molester.  Plaintiff filed another grievance against Renteria and other Defendants began retaliating against him.  Defendant Drew asked Plaintiff to withdraw the grievance, Plaintiff refused, so Defendants Cooper and Renteria searched him and required him to keep his arms up which caused him pain.  Pina retaliated by filing false rules violation reports against Plaintiff.  Defendant Gadsden retaliated by removing Plaintiff from his job.  Defendant Vella retaliated by placing Plaintiff on C-status.

Filing a grievance is a protected action under the First Amendment.  Valandingham v. Bojorquez, 866 F.2d 1135, 1138 (9th Cir. 1989).  Retaliatory searches, mail interference, false rules violation reports, being removed from a job, and being placed on C-status are all adverse actions.  Thus, Plaintiff has satisfied the first and third prongs of the retaliation standard.

With respect to the fourth prong, "[it] would be unjust to allow a defendant to escape

liability for a First Amendment violation merely because an unusually determined plaintiff persists in his protected activity . . . ."  Mendocino Envtl. Ctr. v. Mendocino County, 192 F.3d 1283, 1300 (9th Cir. 1999).  The correct inquiry is to determine whether an official's acts would chill or silence a person of ordinary firmness from future First Amendment activities.  Rhodes, 408 F.3d at 568-69 (citing Mendocino Envtl. Ctr., 192 F.3d at 1300).  Plaintiff does not allege that his speech was chilled, however a person of ordinary firmness would be silenced.  Thus, Plaintiff has satisfied the fourth prong.

The second element of a prisoner retaliation claim focuses on causation and motive. See Brodheim v. Cry, 584 F.3d 1262, 1271 (9th Cir. 2009).  A plaintiff must show that his protected conduct was a "'substantial' or 'motivating' factor behind the defendant's conduct."  Id. (quoting Morgan, 874 F.2d at 1314).  Although it can be difficult to establish the motive or intent of the defendant, a plaintiff may rely on circumstantial evidence.  Bruce v. Ylst, 351 F.3d 1283, 1289 (9th Cir. 2003) (finding that a prisoner established a triable issue of fact regarding prison officials' retaliatory motives by raising issues of suspect timing, evidence, and statements); Hines v. Gomez, 108 F.3d 265, 267-68 (9th Cir. 1997); Pratt v. Rowland, 65 F.3d 802, 808 (9th Cir. 1995) ("timing can properly be considered as circumstantial evidence of retaliatory intent").  Plaintiff alleges that basically all other Defendants' actions towards him were in retaliation for filing a grievance against Defendant Renteria.  First, Plaintiff does not demonstrate that Defendants Pina, Gadsden, or Vella had any knowledge of Plaintiff's grievance against Defendant Renteria or of the mail interference.  Therefore, Plaintiff has not stated adequate facts against Defendants Pina, Gadsden, or Vella to satisfy the second prong of his retaliation claim.

As to Defendants Drew and Cooper, the timing is suspect, in that Drew asked Plaintiff to withdraw the grievance, Plaintiff refused, and then was searched and made to keep his arms in the air even though it caused him pain.  This satisfies the second prong as to Defendants Drew and Cooper.

As to Defendant Renteria, Plaintiff states that after he filed the initial grievance Renteria again interfered with his mail, refused to call him to his job, searched only Plaintiff

7

1  before going into buildings, and gave his niece's letter to a child molester.  This satisfies

2  the second prong as to Defendant Renteria.

3  With respect to the fifth prong, a prisoner must affirmatively allege that "the prison

4  authorities' retaliatory action did not advance legitimate goals of the correctional institution

5  or was not tailored narrowly enough to achieve such goals."  Rizzo, 778 F.2d at 532.  This

6  is not a high burden to reach.  See id. (prisoner's allegations that search was arbitrary and

7  capricious sufficient to satisfy this inquiry).  Plaintiff makes no statements regarding

8  penological goals or whether the allegedly adverse acts were related to such goals.  Thus,

9  Plaintiff has failed to reach the fifth prong.

10  Because Plaintiff has failed to allege sufficient facts to satisfy all five prongs of his

11  retaliation claim, the Court finds that he has failed to state a claim upon which relief could

12  be granted.  The Court will grant Plaintiff leave to amend this claim and attempt to set forth

13  sufficient facts to state such a claim.  In his amendment, Plaintiff should describe in greater

14  detail how all Defendants were involved with the incident and then the retaliation.

15  **B.   Eighth Amendment**

16  Plaintiff alleges excessive force, failure to protect, and deliberate indifference to a

17  serious medical need, all in violation of the Eighth Amendment.

18  1.   Excessive Use of Force

19  Plaintiff claims that Defendants used excessive force in violation of his constitutional

20  rights.

21  The analysis of an excessive force claim brought pursuant to Section 1983 begins

22  with "identifying the specific constitutional right allegedly infringed by the challenged

23  application of force."  Graham v. Connor, 490 U.S. 386, 394 (1989).  The Eighth

24  Amendment's prohibition on cruel and unusual punishment applies to incarcerated

25  individuals, such as the Plaintiff here.  Whitley v. Albers, 475 U.S. 312, 318 (1976).  To

26  state an Eighth Amendment claim, a plaintiff must allege that the use of force was

27  "unnecessary and wanton infliction of pain."  Jeffers v. Gomez, 267 F.3d 895, 910 (9th Cir.

28  2001).   The malicious and sadistic use of force to cause harm always violates

1  contemporary standards of decency, regardless of whether or not significant injury is

2  evident. Hudson v. McMillian, 503 U.S. 1, 9; see also Oliver v. Keller, 289 F.3d 623, 628

3  (9th Cir. 2002) (Eighth Amendment excessive force standard examines *de minimis* uses

4  of force, not *de minimis* injuries). However, not "every malevolent touch by a prison guard

5  gives rise to a federal cause of action." Hudson, 503 U.S. at 9. "The Eighth Amendment's

6  prohibition of cruel and unusual punishments necessarily excludes from constitutional

7  recognition *de minimis* uses of physical force, provided that the use of force is not of a sort

8  repugnant to the conscience of mankind." Id. at 9-10 (internal quotations marks and

9  citations omitted).

10      Whether force used by prison officials was excessive is determined by inquiring if

11  the "force was applied in a good-faith effort to maintain or restore discipline, or maliciously

12  and sadistically to cause harm." Hudson, 503 U.S. at 6-7. The Court must look at the

13  need for application of force; the relationship between that need and the amount of force

14  applied; the extent of the injury inflicted; the extent of the threat to the safety of staff and

15  inmates as reasonably perceived by prison officials; and any efforts made to temper the

16  severity of the response. See Whitley, 475 U.S. at 321. The absence of significant injury

17  alone is not dispositive of a claim of excessive force. See Wilkens v. Gaddy, 130 S.Ct.

18  1175, 1176-77 (2010).

19      Plaintiff states that Defendant Cooper kicked Plaintiff's feet farther apart during a

20  bodily search. As currently pleaded, it appears that Defendant Cooper applied force in a

21  good-faith effort to maintain discipline as he was conducting a bodily search of Plaintiff.

22  This does not state a claim for excessive force. Plaintiff will be given leave to amend.

23      Plaintiff states that Defendant Vella ordered that Plaintiff be extracted from his cell.

24  Defendant Vella was not involved in the cell extraction, therefore, he can not be held

25  responsible for other prison officials' conduct during the extraction. Thus, this claim fails.

26  Plaintiff will be given leave to amend.

27          2.      Failure to Protect

28      Plaintiff states that Defendant Drew failed to protect Plaintiff from Defendant

9

Cooper's excessive force.

"[A] prison official may be held liable under the Eighth Amendment for denying humane conditions of confinement only if he knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." Farmer v. Brennan, 511 U.S. 825, 847 (1994). "A prison official may be held liable for failing to protect an inmate from another prison guard if he knew of an excessive risk to inmate health or safety posed by the other prison guard and disregarded that risk." Jones v. Ruiz, 2010 WL 3505119, *7 (W.D.Tex Sept. 2, 2010) (citations omitted). The Ninth Circuit has noted that "police officers have a duty to intercede when their fellow officers violate the constitutional rights of a suspect or other citizen." U.S. v. Koon, 34 F.3d 1416, 1446-47 n.25 (9th Cir. 1994), rev'd on other grounds by 518 U.S. 81 (1996); Estate of Brutsche v. City of Federal Way, 2006 WL 3734153, *5-6 (W.D.Wash. Dec.14, 2006). "If a bystander officer fails to fulfill this duty, he can face the same liability as colleagues who directly violated the suspect's rights." Aragonez v. County of San Bernardino, 2008 WL 4948410, *6 (C.D.Cal. Nov. 18, 2008). Bystander officers only have a duty to stop a violation where they know or have reason to know of the constitutional violation. Ting v. U.S., 927 F.2d 1504, 1511 (9th Cir. 1991), see also Ramirez v. Butte-Silver Bow County, 298 F.3d 1022, 1029-30 (9th Cir. 2002) (holding that bystander officers could not be held liable for failing to stop an unlawful search where they had no reason to believe the warrant at issue was defective).

However, "law enforcement officers are only liable for failure to intercede if they had a 'realistic opportunity' to do so." Radwan v. County of Orange, 2010 WL 3293354, *24 (C.D.Cal. Aug. 18, 2010); see Cunningham v. Gates, 229 F.3d 1271, 1289-90 (9th Cir. 2000). If an officer is not present during a constitutional violation, or the violation happens too quickly, there may be no realistic opportunity to intercede. See id.; Knapps v. City of Oakland, 647 F.Supp.2d 1129, 1159-60 (N.D.Cal. 2009).

Plaintiff fails to allege sufficient facts to sustain a claim of failure to protect against the Defendant Drew. First, as stated above, it does not appear that Defendant Cooper

1   used excessive force on Plaintiff.   Second, assuming that there was excessive force,

2   Plaintiff does not state that Defendant Drew had a reasonable opportunity to intercede, nor

3   does he state that Drew was aware of the risk posed by Defendant Cooper.   Thus, this

4   claim fails.   To state a claim, Plaintiff must include additional facts that allow the Court to

5   determine if excessive force was used, whether Defendant Drew had knowledge of the

6   Defendant Cooper's propensities and if he was then deliberately indifferent to a danger

7   created by Defendant Cooper or that he had an opportunity to intercede.

8                              3.   Medical Care

9           Plaintiff alleges that he was not made aware of the risk of contracting Valley Fever.

10          "[T]o maintain an Eighth Amendment claim based on prison medical treatment, an

11   inmate must show 'deliberate indifference to serious medical needs.'"   Jett v. Penner, 439

12   F.3d 1091, 1096 (9th Cir. 2006) (quoting Estelle v. Gamble, 429 U.S. 97, 106 (1976)).   The

13   two part test for deliberate indifference requires the plaintiff to show (1) "'a serious medical

14   need' by demonstrating that 'failure to treat a prisoner's condition could result in further

15   significant injury or the unnecessary and wanton infliction of pain,'" and (2) "the defendant's

16   response to the need was deliberately indifferent."   Jett, 439 F.3d at 1096 (quoting

17   McGuckin v. Smith, 974 F.2d 1050, 1059 (9th Cir. 1992), overruled on other grounds,

18   WMX Techs., Inc. v. Miller, 104 F.3d 1133 (9th Cir. 1997) (en banc) (internal quotations

19   omitted)).   Deliberate indifference is shown by "a purposeful act or failure to respond to a

20   prisoner's pain or possible medical need, and harm caused by the indifference."   Jett, 439

21   F.3d at 1096 (citing McGuckin, 974 F.2d at 1060).   In order to state a claim for violation of

22   the Eighth Amendment, a plaintiff must allege sufficient facts to support a claim that the

23   named defendants "[knew] of and disregard[ed] an excessive risk to [Plaintiff's] health . .

24   . ."   Farmer v. Brennan, 511 U.S. 825, 837 (1994).

25          In applying this standard, the Ninth Circuit has held that before it can be said that

26   a prisoner's civil rights have been abridged, "the indifference to his medical needs must be

27   substantial.   Mere 'indifference,' 'negligence,' or 'medical malpractice' will not support this

28   cause of action."   Broughton v. Cutter Laboratories, 622 F.2d 458, 460 (9th Cir. 1980)

                                              11

1  (citing Estelle, 429 U.S. at 105-06).  "[A] complaint that a physician has been negligent in

2  diagnosing or treating a medical condition does not state a valid claim of medical

3  mistreatment under the Eighth Amendment.  Medical malpractice does not become a

4  constitutional violation merely because the victim is a prisoner." Estelle, 429 U.S. at 106;

5  see also Anderson v. County of Kern, 45 F.3d 1310, 1316 (9th Cir. 1995); McGuckin, 974

6  F.2d at 1050, overruled on other grounds, WMX, 104 F.3d at 1136.  Even gross negligence

7  is insufficient to establish deliberate indifference to serious medical needs.  See Wood v.

8  Housewright, 900 F.2d 1332, 1334 (9th Cir. 1990).

9       Also, "a difference of opinion between a prisoner-patient and prison medical

10  authorities regarding treatment does not give rise to a § 1983 claim." Franklin v. Oregon,

11  662 F.2d 1337, 1344 (9th Cir. 1981) (internal citation omitted).  To prevail, Plaintiff "must

12  show that the course of treatment the doctors chose was medically unacceptable under

13  the circumstances . . . and . . . that they chose this course in conscious disregard of an

14  excessive risk to plaintiff's health." Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir. 1986)

15  (internal citations omitted).  A prisoner's mere disagreement with diagnosis or treatment

16  does not support a claim of deliberate indifference.  Sanchez v. Vild, 891 F.2d 240, 242

17  (9th Cir. 1989).

18       The Court finds that Plaintiff has failed to state a claim under the Eighth

19  Amendment.  He has not alleged that any Defendant had knowledge of the risk to Plaintiff

20  nor has he alleged that any Defendant was deliberately indifferent to that risk.  He only

21  states that he was not made aware of the risk of contracting Valley Fever.

22       The Court will give Plaintiff leave to amend this claim in an attempt to state a

23  constitutional violation.  However, Plaintiff should note that the courts of this district have

24  repeatedly found such claims to be insufficient.  "[T]o the extent that Plaintiff is attempting

25  to pursue an Eighth Amendment claim for the mere fact that he was confined in a location

26  where Valley Fever spores existed which caused him to contract Valley Fever, he is

27  advised that no courts have held that exposure to Valley Fever spores presents an

28  excessive risk to inmate health." King v. Avenal State Prison, 2009 WL 546212, *4 (E.D.

Cal., Mar. 4, 2009); see also Tholmer v. Yates, 2009 WL 174162, *3 (E.D. Cal., Jan. 26, 2009) ("To the extent Plaintiff seeks to raise an Eighth Amendment challenge to the general conditions of confinement at PVSP, Plaintiff fails to allege facts that indicate Defendants are responsible for the conditions of which Plaintiff complains," such as "acts or omissions of Defendants have caused an excessively high risk of contracting valley fever at PVSP").

### C.    Fourteenth Amendment

Plaintiff appears to allege that he did not receive sufficient due process for hearings held.

The Due Process Clause protects prisoners from being deprived of life, liberty, or property without due process of law. Wolff v. McDonnell, 418 U.S. 539, 556 (1974). In order to prevail on a claim of deprivation of due process, a plaintiff must first establish the existence of a liberty or property interest for which the protection is sought. See Ingraham v. Wright, 430 U.S. 651, 672 (1977); Bd. of Regents v. Roth, 408 U.S. 564, 569 (1972). Due process protects against the deprivation of property where there is a legitimate claim of entitlement to the property. See Bd. of Regents, 408 U.S. at 577. Protected property interests are created, and their dimensions are defined, by existing rules that stem from an independent source-such as state law-and which secure certain benefits and support claims of entitlement to those benefits. See id.

Liberty interests can arise both from the Constitution and from state law. See Hewitt v. Helms, 459 U.S. 460, 466 (1983); Meachum v. Fano, 427 U.S. 215, 224–27 (1976); Smith v. Sumner, 994 F.2d 1401, 1405 (9th Cir. 1993). In determining whether the Constitution itself protects a liberty interest, the court should consider whether the practice in question "is within the normal limits or range of custody which the conviction has authorized the State to impose." Wolff, 418 U.S. at 557–58; Smith, 994 F.2d at 1405. Applying this standard, the Supreme Court has concluded that the Constitution itself provides no liberty interest in good-time credits, see Wolff, 418 U.S. at 557; in remaining in the general population, see Sandin v. Conner, 515 U.S. 472, 485–86 (1995); in not

13

losing privileges, see Baxter v. Palmigiano, 425 U.S. 308, 323 (1976); in staying at a particular institution, see Meachum, 427 U.S. at 225–27; or in remaining in a prison in a particular state, see Olim v. Wakinekona, 461 U.S. 238, 245–47 (1983).

In determining whether state law confers a liberty interest, the Supreme Court has adopted an approach in which the existence of a liberty interest is determined by focusing on the nature of the deprivation. See Sandin v. Connor, 515 U.S. 472, 481–84 (1995). In doing so, the Court has held that state law creates a liberty interest deserving of protection only where the deprivation in question: (1) restrains the inmate's freedom in a manner not expected from the sentence; and (2) "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Id. at 483–84. Prisoners in California have a liberty interest in the procedures used in prison disciplinary hearings where a successful claim would not necessarily shorten the prisoner's sentence. See Ramirez v. Galaza, 334 F.3d 850, 853, 859 (9th Cir. 2003) (concluding that a due process challenge to a prison disciplinary hearing which did not result in the loss of good-time credits was cognizable under § 1983); see also Wilkinson v. Dotson, 544 U.S. 74, 82 (2005) (concluding that claims which did not seek earlier or immediate release from prison were cognizable under § 1983).

As currently pleaded, it appears that Plaintiff might be able to state a due process claim in relation to the hearings he received. Plaintiff states that he was not allowed to call witnesses nor was he allowed to present his side of the case. However, the Court cannot determine which Defendant Plaintiff is attempting to hold liable for these actions. Plaintiff appears to describe two hearing, however, the Court unsure if there were in fact two hearings or if there was just one.

Plaintiff will be given one additional opportunity to amend his complaint. In his amended complaint, Plaintiff must describe in greater detail his claim including, but not limited to, any notice he received about the hearing, whether he was afforded the opportunity to state his views or have witnesses, why the hearing was held, the outcome of the hearing, the consequences of the hearing, etc.

1      **D.    Prison Policies**

2          It appears that Plaintiff is alleging that Defendants violated prison policy or

3   regulations through their actions or inactions. An allegation that a defendant violated a

4   prison policy is not sufficient to state a constitutional claim. See Gardner v. Howard, 109

5   F.3d 427, 430 (8th Cir. 1997) (no Section 1983 liability for violation of prison policy)). "In

6   order to set forth a claim under 42 U.S.C. § 1983, an inmate must show a violation of his

7   constitutional rights, not merely a violation of prison policy." Moore v. Schuetzle, 486

8   F.Supp.2d 969, 989 (D.N.D. 2007).   Accordingly, Plaintiff's allegation that Defendants

9   violated Section 1983 by failing to comply with a prison regulation fails to state a claim

10  upon which relief could be granted.

11     **E.    Conspiracy**

12         Plaintiff states that all Defendants were conspiring against him.

13         A conspiracy claim brought under Section 1983 requires proof of "'an agreement or

14  meeting of the minds to violate constitutional rights,'" Franklin v. Fox, 312 F.3d 423, 441

15  (9th Cir. 2001) (quoting United Steel Workers of Am. v. Phelps Dodge Corp., 865 F.2d

16  1539, 1540-41 (9th Cir. 1989) (citation omitted)), and an actual deprivation of constitutional

17  rights, Hart v. Parks, 450 F.3d 1059, 1071 (9th Cir. 2006) (quoting Woodrum v. Woodward

18  County, Oklahoma, 866 F.2d 1121, 1126 (9th Cir. 1989)). "'To be liable, each participant

19  in the conspiracy need not know the exact details of the plan, but each participant must at

20  least share the common objective of the conspiracy.'" Franklin, 312 F.3d at 441 (quoting

21  United Steel Workers, 865 F.2d at 1541).

22         The federal system is one of notice pleading, and the Court may not apply a

23  heightened pleading standard to Plaintiff's allegations of conspiracy. Empress LLC v. City

24  and County of San Francisco, 419 F.3d 1052, 1056 (9th Cir. 2005); Galbraith v. County of

25  Santa Clara, 307 F.3d 1119, 1126 (2002).   However, although accepted as true, the

26  "[f]actual allegations must be [sufficient] to raise a right to relief above the speculative level

27  . . . ." Twombly, 127 S.Ct. at 1965 (citations omitted).   A plaintiff must set forth "the

28  grounds of his entitlement to relief[,]" which "requires more than labels and conclusions,

15

1  and a formulaic recitation of the elements of a cause of action . . . ." Id. at 1964-65

2  (internal quotations and citations omitted).  As such, a bare allegation that Defendants

3  conspired to violate Plaintiff's constitutional rights will not suffice to give rise to a conspiracy

4  claim under section 1983.

5        **F.     State Law**

6        Plaintiff alleges state law claims including assault and battery and wrongful

7  termination.

8        "To the extent that the violation of a state law amounts to the deprivation of a

9  state-created interest that reaches beyond that guaranteed by the federal Constitution,

10  Section 1983 offers no redress." Id.  However, pursuant to 28 U.S.C. § 1367(a), in any civil

11  action in which the district court has original jurisdiction, the district court "shall have

12  supplemental jurisdiction over all other claims in the action within such original jurisdiction

13  that they form part of the same case or controversy under Article III."  "[O]nce judicial

14  power exists under § 1367(a), retention of supplemental jurisdiction over state law claims

15  under 1367(c) is discretionary."  Acri v. Varian Assoc., Inc., 114 F.3d 999, 1000 (9th Cir.

16  1997).

17        Further, under the California Tort Claims Act ("CTCA"), a plaintiff may not maintain

18  an action for damages against a public employee unless he timely filed a notice of tort

19  claim.  Cal. Gov't Code §§ 905, 911.2, 945.4 & 950.2; Mangold v. California Pub. Utils.

20  Comm'n, 67 F.3d 1470, 1477 (9th Cir. 1995).  Thus, to raise a state claim, Plaintiff must

21  allege facts demonstrating compliance with the presentation requirement of the California

22  Tort Claims Act.  State of California v. Superior Court, 32 Cal.4th 1234, 1243–44, 13

23  Cal.Rptr.3d 534, 90 P.3d 116 (2004); Snipes v. City of Bakersfield, 145 Cal.App.3d 861,

24  865, 193 Cal.Rptr. 760 (Cal.App. 1983).  When a plaintiff fails to allege compliance, it is

25  fatal to the cause of action and results in the dismissal of the state law claim.  Id.; Willis v.

26  Reddin, 418 F.2d 702, 704 (9th Cir. 1969).

27        Plaintiff has not alleged that he complied with the CTCA in relation to his state

28  claims.  Therefore, these claims fail.  If Plaintiff chooses to amend, he must demonstrate

1    compliance with the CTCA.

2        **G.    Personal Participation and Supervisory Liability**

3        Plaintiff appears to be arguing that Defendants Tilton, Cate, and Adams are liable

4    for the conduct of subordinates as, according to Plaintiff's statement of facts, they were not

5    present and did not participate in any of the complained of conduct.  In fact, Defendants

6    Tilton, Cate, and Adams are not mentioned at all in the factual allegations that make up

7    Plaintiff's Complaint.

8        Under Section 1983, Plaintiff must demonstrate that each named Defendant

9    personally participated in the deprivation of his rights.  Jones v. Williams, 297 F.3d 930,

10   934 (9th Cir. 2002).  The Supreme Court has emphasized that the term "supervisory

11   liability," loosely and commonly used by both courts and litigants alike, is a misnomer.

12   Iqbal, 129 S.Ct. at 1949.  "Government officials may not be held liable for the

13   unconstitutional conduct of their subordinates under a theory of respondeat superior."  Id.

14   at 1948.  Rather, each government official, regardless of his or her title, is only liable for

15   his or her own misconduct, and therefore, Plaintiff must demonstrate that each defendant,

16   through his or her own individual actions, violated Plaintiff's constitutional rights.  Id. at

17   1948-49.

18       When examining the issue of supervisor liability, it is clear that the supervisors are

19   not subject to vicarious liability, but are liable only for their own conduct.  Jeffers v. Gomez,

20   267 F.3d 895, 915 (9th Cir. 2001); Wesley v. Davis, 333 F.Supp.2d 888, 892 (C.D.Cal.

21   2004).  In order to establish liability against a supervisor, a plaintiff must allege facts

22   demonstrating (1) personal involvement in the constitutional deprivation, or (2) a sufficient

23   causal connection between the supervisor's wrongful conduct and the constitutional

24   violation.  Jeffers, 267 F.3d at 915; Wesley, 333 F.Supp.2d at 892.  The sufficient causal

25   connection may be shown by evidence that the supervisor implemented a policy so

26   deficient that the policy itself is a repudiation of constitutional rights.  Wesley, 333

27   F.Supp.2d at 892 (internal quotations omitted). However, an individual's general

28   responsibility for supervising the operations of a prison is insufficient to establish personal

involvement.  Id. (internal quotations omitted).

Supervisor liability under Section 1983 is a form of direct liability.  Munoz v. Kolender, 208 F.Supp.2d 1125, 1149 (S.D.Cal. 2002).  Under direct liability, Plaintiff must show that Defendant breached a duty to him which was the proximate cause of his injury.  Id.  "'The requisite causal connection can be established . . . by setting in motion a series of acts by others which the actor knows or reasonably should know would cause others to inflict the constitutional injury.'"  Id. (quoting Johnson v. Duffy, 588 F.2d 740, 743-744 (9th Cir. 1978)).

Plaintiff has not alleged facts demonstrating that any of the named Defendants personally acted to violate his rights.  In his Amended Complaint, Plaintiff needs to specifically link each Defendant to a violation of his rights.  Plaintiff shall be given the opportunity to file an amended complaint curing the deficiencies in this respect.

## V.   CONCLUSION AND ORDER

The Court finds that Plaintiff's Complaint fails to state any Section 1983 claims upon which relief may be granted.  The Court will provide Plaintiff time to file an amended complaint to address the potentially correctable deficiencies noted above.  See Noll v. Carlson, 809 F.2d 1446, 1448-49 (9th Cir. 1987).  In his Amended Complaint, Plaintiff must demonstrate that the alleged incident or incidents resulted in a deprivation of his constitutional rights. Iqbal, 129 S.Ct. at 1948-49.  Plaintiff must set forth "sufficient factual matter . . . to 'state a claim that is plausible on its face.'" Iqbal, 129 S.Ct. at 1949 (quoting Twombly, 550 U.S. at 555).  Plaintiff must also demonstrate that each defendant personally participated in the deprivation of his rights.  Jones, 297 F.3d at 934.

Plaintiff should note that although he has been given the opportunity to amend, it is not for the purposes of adding new defendants or claims.  Plaintiff should focus the amended complaint on claims and defendants relating solely to the issues discussed herein.

Finally, Plaintiff is advised that Local Rule 220 requires that an amended complaint be complete in itself without reference to any prior pleading.  As a general rule, an

1  amended complaint supersedes the original complaint.  See Loux v. Rhay, 375 F.2d 55,

2  57 (9th Cir. 1967).  Once an amended complaint is filed, the original complaint no longer

3  serves any function in the case.  Therefore, in an amended complaint, as in an original

4  complaint, each claim and the involvement of each defendant must be sufficiently alleged.

5  The amended complaint should be clearly and boldly titled "Fourth Amended Complaint,"

6  refer to the appropriate case number, and be an original signed under penalty of perjury.

7         Based on the foregoing, it is HEREBY ORDERED that:

8     1.    Plaintiff's Complaint is dismissed for failure to state a claim, with leave to file

9           an amended complaint within thirty (30) days from the date of service of this

10          order;

11    2.    Plaintiff shall caption the amended complaint "Fourth Amended Complaint"

12          and refer to the case number 1:07-cv-1711-LJO-GBC (PC); and

13    3.    If Plaintiff fails to comply with this order, this action will be dismissed for

14          failure to state a claim upon which relief may be granted.

15  IT IS SO ORDERED.

16  Dated:    July 20, 2011

17                                        UNITED STATES MAGISTRATE JUDGE

18

19

20

21

22

23

24

25

26

27

28